## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

DENETRA T. BRISBON,          )
                                      )
             Plaintiff,       )
                                      )
        v.                 )       Civil Action No. 17-2099 (RBW)
                                      )
RICHARD S. TISCHNER,[1] in his official  )
capacity as Director of the Court Services  )
and Offender Supervision Agency,     )
                                      )
          Defendant.     )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, Denetra T. Brisbon, brings this civil action against the defendant, Richard

S. Tischner, in his official capacity as the Director of the Court Services and Offender

Supervision Agency ("CSOSA"), asserting claims of discrimination based upon her race, and

retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a)

("Title VII), <u>see</u> Complaint ("Compl.") ¶¶ 15–26, ECF No. 1; and discrimination based upon her

age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a (the "ADEA"),

<u>see id.</u> ¶¶ 27–31.  Currently pending before the Court is the Defendant's Motion for Summary

Judgment.  <u>See</u> Defendant's Motion for Summary Judgment ("Def.'s Mot." or the "defendant's

motion"), ECF No. 54.  Upon careful consideration of the parties' submissions,[2] the Court

---

[1] Richard S. Tischner is the current Director of the Court Services and Offender Supervision Agency, and he is therefore substituted for Adrienne Poteat as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), ECF No. 54-1; (2) the Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Facts"), ECF No. 54-2; (3) the Plaintiff's Memorandum of Points and

(continued . . .)

concludes for the following reasons that it must grant the defendant's motion for summary judgment.

## I.      BACKGROUND

### A.      Factual Background

The plaintiff, Denetra T. Brisbon, is "an African-American female, born on April 25, 1959[,]" Def.'s Facts ¶ 3; see Pl.'s Facts ¶ 3, who at the time that she filed her Complaint in this case "held the position of Supervisory Community Supervision Officer, GS-13, Branch V Team 25 with CSOSA," Def.'s Facts ¶ 2; see Pl.'s Facts ¶ 2. The plaintiff "has been employed at CSOSA since 1998," Def.'s Facts ¶ 6; see Pl.'s Facts ¶ 6, and "has held the position of Supervisory Community Supervision Officer . . . since March 2008[,]" Def.'s Facts ¶ 8; see Pl.'s Facts ¶ 8. During the time relevant to the facts alleged in this case, "[the p]laintiff's first line supervisor was Elizabeth Powell, Branch Chief, and her second line supervisor was then-Acting Associate Director Yolanda Bethea." Def.'s Facts ¶ 9; see Pl.'s Facts ¶ 9.

The plaintiff has filed three separate Equal Employment Opportunity ("EEO") actions against her employer. On January 1, 2007, the plaintiff filed an EEO complaint, see Def.'s Facts ¶ 10; Pl.'s Facts ¶ 10, alleging that "her former supervisor made a racist comment[,]" Compl. ¶ 7. As to this complaint, "a default judgment in [the p]laintiff's favor was issued by an [Equal Employment Opportunity Commission ('[]EEOC[')] Administrative Judge on September 26, 2011." Def.'s Facts ¶ 12; see Pl.'s Facts ¶ 12; see also Compl. ¶ 7. On May 14, 2013, the plaintiff filed a second EEO complaint, see Def.'s Facts ¶ 11; Pl.'s Facts ¶ 11, "alleging reprisal

---

(. . . continued)
Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 56; (4) the Plaintiff's Statement of Disputed Material Facts in Support of Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Facts"), ECF No. 56-1; and (5) the Defendant's Reply in Support of Its Motion for Summary Judgment ("Def.'s Reply"), ECF No. 57.

for a lowered performance evaluation, which was withdrawn in 2016[,]" Compl. ¶ 7.  Finally, the

plaintiff filed a third EEO complaint on October 21, 2016, see Def.'s Facts ¶ 13; Pl.'s Facts ¶ 13,

after her non-selection, which forms the basis for the plaintiff's discrimination claims in this

case, occurred, see Def.'s Facts ¶ 59 (stating that the selection announcement occurred on June

30, 2016); Pl.'s Facts ¶ 59.

On March 3, 2016, "[the p]laintiff applied for the position of Supervisory Community

Supervision Officer, GS-0101-14 (Branch Chief)[.]"  Def.'s Facts ¶ 16; see Pl.'s Facts ¶ 16.

"[S]ixteen [ ] applicants, including [the p]laintiff, [were] referred and placed on the Certification

List" for the position, Def.'s Facts ¶ 17; see Pl.'s Facts ¶ 17, one of whom was Caucasian and at

least twelve of whom were African American, see Def.'s Facts ¶ 18; Pl.'s Facts ¶ 18.[3]  "All

sixteen candidates . . . were internal to CSOSA and had an initial qualification score of 93 to 100

(out of a possible 100), given by the Office of Human Resources."  Def.'s Facts ¶ 19; see Pl.'s

Facts ¶ 19.  A panel comprised of "five CSOSA supervisory employees[,]" Def.'s Facts ¶ 20; see

Pl.'s Facts ¶ 20, interviewed each candidate "on four separate dates, over a two-week period[,]"

Def.'s Facts ¶ 23; see Pl.'s Facts ¶ 23.  Specifically, the panel consisted of:

> (1) Lorenzo Harris, Branch Chief, Branch III Behavioral Health (African-American Male); (2) Valerie Collins, Branch Chief, Branch IV Special Supervision (African-American Female); (3) Hyun Park, Special Assistant to the Deputy Director (Asian Female); (4) William Ashe, Branch Chief, Branch IIB General Supervisor (African-American male); and [(5)] Debra Dawson-Kafami, Deputy Associate Director (Caucasian female).

Def.'s Facts ¶ 21; see Pl.'s Facts ¶ 21.

---

[3] The parties dispute the exact racial make-up of the candidate pool.  The defendant states that, "[o]f the referred candidates, twelve (12) were African American, two (2) were Hispanic, one (1) was Caucasian, and one (1) was Asian."  Def.'s Facts ¶ 18.  The plaintiff states that "there were thirteen (13) African American candidates, one (1) Hispanic candidate, and one (1) Caucasian candidate."  Pl.'s Facts ¶ 18.

The plaintiff "interviewed for the position on April 8, 2016." Def.'s Facts ¶ 25; see Pl.'s Facts ¶ 25.  The candidates were each asked the same interview questions, see Def.'s Facts ¶ 24; Pl.'s Facts ¶ 24, and "[t]he strength of the candidates' [ ] responses were weighed more heavily than the candidates' years of experience[,]" Def.'s Facts ¶ 28 (citing Def.'s Mot., Exhibit ("Ex.") 7 (Deposition of Debra Dawson-Kafami ("Kafami Dep.")) 30:3–8, ECF No. 54-11); see Pl.'s Facts ¶ 28.  The interview panel focused on "the applicant's leadership skills, problem-solving capability, and conflict resolution skills."  Def.'s Facts ¶ 27 (citing Def.'s Mot. Ex. 7 (Kafami Dep.) 30:3–8); see Pl.'s Facts ¶ 27.  After considering each of the candidates, the interview panel "determined, by consensus, that [the p]laintiff's interview performance was insufficient to advance further in the selection process."  Def.'s Facts ¶ 31; see Pl.'s Facts ¶ 31.  They specifically "felt that [the p]laintiff lacked an understanding of evidence-based practices and problem solving skills, and failed to reference plans to motivate staff and combat resistance to change[,]" both of which were considered "critical for success in the vacancy."  Def.'s Facts ¶ 32; see Pl.'s Facts ¶ 32.

Ultimately, the interview panel ranked the plaintiff's interview as "one of the lowest performances in the candidate pool[,]" Def.'s Facts ¶ 37; see Pl.'s Facts ¶ 37, and determined that candidate Kaitlin Forsha "ha[d] the strongest interview performance," Def.'s Facts ¶ 38; see Pl.'s Facts ¶ 38.  Forsha is a Caucasian female.  See Compl. ¶ 8.  On April 22, 2016, the interview panel recommended three candidates for the Branch Chief position to Yolanda Bethea, Acting Associate Director: "(1) Kaitlin Forsha; (2) Dominique Prophet; and (3) Laquisha Campbell."  See Def.'s Facts ¶¶ 45–46; see Pl.'s Facts ¶¶ 45–46.  "Ms. Bethea recommended Kaitlin Forsha for promotion to the Branch Chief position[,]" Def.'s Facts ¶ 47; see Pl.'s Facts ¶ 47, "submitt[ing] the [ ] recommendation to her immediate supervisor, Deputy Director James

Berry, for concurrence or rejection[,]" Def.'s Facts ¶ 48; see Pl.'s Facts ¶ 48.  "Deputy Director

James Berry . . . ultimately approved the promotion of Ms. Forsha[,]" Def.'s Facts ¶ 57; see Pl.'s

Facts ¶ 57, and the promotion of Forsha to Branch Chief was announced on June 30, 2016, see

Def.'s Facts ¶ 59; Pl.'s Facts ¶ 59.

**B.  Procedural Background**

On October 10, 2017, the plaintiff filed her Complaint in this case.  See Compl.  After an

initial scheduling conference was conducted on July 2, 2018, the parties commenced discovery.

See Order at 1 (July 4, 2018), ECF No. 12.  The parties concluded discovery on April 30, 2021.

See Minute ("Min.") Order (Jan. 26, 2021).  The defendant then filed his motion for summary

judgment on November 17, 2021.  See Def.'s Mot.  The plaintiff filed her opposition on January

7, 2022, see Pl.'s Opp'n, and the defendant filed his reply on January 28, 2022, see Def.'s Reply.

## II.    STANDARD OF REVIEW

A court may grant a motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56 only if "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might

affect the outcome of the suit under the governing law,' and a dispute about a material fact is

genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'"  Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986)).  When ruling on a motion for summary judgment, "[t]he

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

h[er] favor."  Anderson, 477 U.S. at 255.  "Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

a judge . . . ruling on a motion for summary judgment[.]"  Id.  The movant has the burden of

demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.   ANALYSIS

The defendant argues that he is entitled to summary judgment because "[the p]laintiff fails to carry her evidentiary burden on her race and age discrimination[,] and retaliation claims." Def.'s Mem. at 9.  Specifically, the defendant argues that he has "provided legitimate and non-discriminatory reasons for [CSOSA's] decision to not select [the p]laintiff[,]" id. at 11, and "[the p]laintiff cannot show that her non-selection was based on any discriminatory motive based on her race or age[,]" id. at 15, or "her prior EEO activity[,]" id.  In response, the plaintiff argues that she "has provided sufficient evidence that the [d]efendant's alleged justifications are mere pretext for retaliation and discrimination and summary judgment is inappropriate in this matter." Pl.'s Opp'n at 31.  Accordingly, the Court will first consider the plaintiff's claims regarding discrimination based upon her race and age, before turning to her retaliation claim.

A.      **The Plaintiff's Discrimination Claims**

The plaintiff claims that, by "exclud[ing] her from consideration for referral to the selecting official while referring three younger, less qualified applicants, and select[ing] a Caucasian employee, who was significantly less qualified and [ ] less experience[d] than [the p]laintiff[,]" Compl. ¶ 19; see id. ¶ 31, the defendant subjected her to discrimination based upon her race, see id. ¶¶ 15–20, and age, see id. ¶¶ 27–31.  The defendant argues that "CSOSA [h]ad [l]egitimate [j]ustifications for [the p]laintiff's [n]on-selection[,]" Def.'s Mem. at 9, namely, that "the interview panel came to the consensus that [the p]laintiff's interview performance was insufficient to advance further in the selection process[,]" id. at 10.  The plaintiff argues in response that the defendant's reasons for the plaintiff's non-selection are mere pretext for discrimination and, in support of her position, contends that: (1) the defendant "deviated from standard procedure[,]" Pl.'s Opp'n at 11, in both the selection process and the administration of interview questions, see id. at 10–16; (2) the defendant's "fail[ure] to produce any record of notes from the interview panel[,]" id. at 16, "raise[s] an inference of spoliation of evidence[,]" id. at 18; (3) the selected candidate's "lack of qualifications compared to [the p]laintiff's significantly greater qualifications give rise to an inference of discrimination[,]" id.; and (4) the defendant's "inconsistent and shifting justifications to mask its pre-selection of Ms. Forsha . . . give rise to an inference of discriminatory pretext[,]" id. at 22.

When a plaintiff brings discrimination claims under Title VII and the ADEA, and relies on circumstantial evidence to establish an alleged unlawful employment action, as the plaintiff does here, see generally Pl.'s Opp'n, the Court analyzes the claims under the three-part burden-shifting framework of McDonnell Douglas Corp. v. Green.  See Jackson v. Gonzales, 496 F.3d 703, 706 (D.C. Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)); Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (noting that "the

Supreme Court set[s] out a burden-shifting approach [in McDonnell Douglas] to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination"); see also Reshard v. Peters, 579 F. Supp. 2d 57, 72 (D.D.C. 2008) ("The [D.C.] Circuit has extended to ADEA cases the evidentiary burden shifting analysis deemed applicable in Title VII discrimination cases by the Supreme Court in McDonnell Douglas." (citing Forman v. Small, 271 F.3d 285, 292 (D.C. Cir. 2001))).   Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing her prima facie case of discrimination.   411 U.S. at 802; see Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015); see also Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).   Furthermore, to establish a prima facie case in the context of a non-selection claim, the plaintiff must show: "(i) that he [or she] belongs to a [protected class]; (ii) that he [or she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his [or her] qualifications, he [or she] was rejected[.]"  Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149–50 (D.C. Cir. 2004).   Once a prima facie case is established, then "[t]he burden . . . must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions.  McDonnell Douglas, 411 U.S. at 802; see Walker, 798 F.3d at 1092; Holcomb, 433 F.3d at 896.   However, if the defendant provides legitimate, non-discriminatory reasons for the adverse employment actions at issue, "the question whether [the plaintiff] actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'"  Brady v. Office of the Sergeant at Arms, U.S. House of Representatives, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 511 (1993)).   The plaintiff must then prove that the defendant's proffered reason was a pretext for discrimination, see McDonnell Douglas, 411 U.S. at 805, and produce "sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory

[ ] reason was not the actual reason and that the employer intentionally discriminated [ ] against the employee[,]" Walker, 798 F.3d at 1092 (internal quotation marks omitted).

Here, the defendant has asserted a legitimate, non-discriminatory reason for the plaintiff's non-selection, namely, that the interview panel determined her "interview performance was insufficient to advance further in the selection process[,]" Def.'s Mem. at 10.  See Carter v. George Wash. Univ., 387 F.3d 872, 879, 881 (D.C. Cir. 2004) (concluding that the defendant's assertions that the plaintiff "interviewed poorly" and that the selected candidate was "the better candidate" constituted legitimate, non-discriminatory reasons for the plaintiff's non-selection); Chappell-Johnson, 574 F. Supp. 2d at 107 ("[The] defendant has offered a legitimate, non-discriminatory reason for not selecting [the] plaintiff.  Simply put: neither the selecting official nor the other two interviewers determined [the] plaintiff to be the best applicant for the position." (emphasis omitted)).  Accordingly, the question of whether the plaintiff has made out a prima facie case of discrimination "drops out of the picture[,]" St. Mary's Honor Ctr., 509 U.S. at 511, and the Court must therefore analyze whether the plaintiff has produced sufficient evidence for a reasonable jury to find that the defendant's asserted reason is pretext for discrimination, see McDonnell Douglas, 411 U.S. at 805.  The Court will consider each of the plaintiff's arguments regarding pretext in turn.

**1.  The Interview and Selection Process**

In support of the plaintiff's contention that "[the d]efendant's justifications for her non-selection were false and pretextual for age and race discrimination[,]" Pl.'s Opp'n at 10, the plaintiff first argues that (1) "[the d]efendant's selection process for the Branch Chief position deviated from standard procedure and included marked favoritism toward [the selectee]," id. at 13–14, and (2) the defendant deviated from standard selection procedures by asking "selected

questions [which] were not directly related to the position being filled and benefitted individuals with limited supervisory experience, such as [the selectee,]" id. at 14.  "A plaintiff may support an inference that her employer's stated reasons for undertaking the adverse employment action in question were pretextual by citing a number of possible sources of evidence, including . . . 'its deviation from established procedures or criteria[.]'"  Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1115 (D.C. Cir. 2016) (quoting Walker, 798 F.3d at 1092).  Viable evidence of pretext may also include the "[u]se of the interview process to minimize a candidate's strengths[.]"  Stoe v. Barr, 960 F.3d 627, 645 (D.C. Cir. 2020) (concluding that a reasonable jury could infer pretext for discrimination where, among other factors, "the most relevant question for the position . . . [was] weighed [ ] equally to the other [ ] questions[ ]" and "[the interviewer] did not ask any questions regarding experience relevant to the position"); see Salazar v. Wash. Metro. Area Transit Auth., 401 F.3d 504, 510 (D.C. Cir. 2005) (finding that a reasonable jury could infer pretext for discrimination where the interview panel "selected an interview agenda which, though facially acceptable, was designed to downplay [the plaintiff's] strengths").  However, "subjective questions during an interview . . . do[] not alone establish pretext[,]" Brown v. Small, No. 05-cv-1086 (RMU), 2007 WL 158719, at *7 n.3 (D.D.C. Jan. 19, 2007), and "[e]ven if a court suspects that a job applicant 'was victimized by [ ] poor selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive[,]'"  Fischbach v. D.C. Dep't of Corrs., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

Regarding the plaintiff's contention that CSOSA deviated from standard selection procedures, her arguments are unavailing for two reasons.  First, the plaintiff's reliance on the actions of Deputy Director James Berry within the selection process as evidence of pretext, see

Pl.'s Opp'n at 11–13, are irrelevant because, per established CSOSA selection procedures, see id., Ex. 1 (Berry Aff.) at 156 ("This is the process I have followed since I have been employed at the CSOSA, for [this type of] vacanc[y.]"), Berry did not consider the plaintiff as a candidate, see Def.'s Facts ¶ 57; Pl.'s Facts ¶ 57.  The plaintiff argues that "[the d]efendant deviated from standard procedure when [ ] Berry did not conduct interviews of the final three individuals recommended by the hiring panel and instead interviewed only Ms. Forsha[,]" id. at 11, and, "[m]oreover, [ ] Berry's 'interview' with Ms. Forsha was merely pro forma and for the purpose of rubber-stamping Ms. Forsha's pre-selection for the position[,]" id. at 13.  However, it is undisputed that Berry only considered the applications of the three candidates recommended by the interview panel for advancement in the selection process, which did not include the plaintiff, see Def.'s Facts ¶ 57; Pl.'s Facts ¶ 57, and Ms. Bethea's recommendation that Ms. Forsha be selected, see Def.'s Facts ¶¶ 47–48; Pl.'s Facts ¶¶ 47–48.  Thus, Berry is not the relevant decision-maker for purposes of the plaintiff's discrimination claim, because unlike the interview panel, he did not evaluate the plaintiff as a candidate, much less compare the plaintiff's candidacy to Ms. Forsha's.

Second, even if the Court were to accept that Berry's actions are relevant in this case, the plaintiff has failed to proffer any evidence that the defendant deviated from standard selection procedures.  Although an employer's "departure from procedure is a 'factor that the trier of fact may deem probative . . . in determining the true motivation behind the hiring decision[,]'" Glenn v. Bair, 643 F. Supp. 2d 23, 38 (D.D.C. 2009) (quoting Johnson v. Lehman, 679 F.2d 918, 922 (D.C. Cir. 1982)) (first alteration in original), the plaintiff must provide some evidence of the standard procedures themselves in order for the Court to evaluate whether there has been a deviation, see, e.g., id. at 38–40 (comparing the defendant's actions to the employer's

"Structured Interview Guidelines").  In support of her argument regarding procedural

irregularities in the selection process, the plaintiff points to one portion of CSOSA's Merit

Promotion Plan, see Pl.'s Opp'n at 2, which states that "Management Officials at all levels

(including selecting and appointing officials) are responsible for applying merit principles

including the principle of equal employment opportunity when filling vacancies.  They will be

held responsible for actions that violate law, regulations, or this [Merit Promotion Plan,]" id., Ex.

2 (Merit Promotion Plan) at 15, ECF No. 56-3.  However, neither this provision, nor any other

provision, of the Merit Promotion Plan provides information or policies regarding specific

selection procedures, see generally id., Ex. 2 (Merit Promotion Plan), and the plaintiff has not

provided any evidence regarding a selection procedure policy from which the defendant

deviated, see generally Pl.'s Opp'n.[4]  Therefore, the Court is without sufficient information

regarding the defendant's standard selection procedure, to which it could compare the

defendant's actions in this case, the burden of production that rests with the plaintiff.

Furthermore, even if the defendant had deviated from standard procedure, it is still "essential that

[the plaintiff] establish discriminatory motive[,]" Johnson, 679 F.2d at 922, and she has not done

---

[4] The parties dispute whether Berry actually interviewed all three candidates referred by the interview panel in
accordance with the defendant's stated selection procedures.  See Pl.'s Opp'n at 12 ("In an apparent effort to hide
the fact that Mr. Berry did not actually interview or meet with Ms. Prophet or Ms. Campbell, [the defendant]
incorrectly states that 'Deputy Director Berry considered each of the three applicants recommended by the panel.'
Mr. Berry's own affidavit within the Report of Investigation belies [the d]efendant's statements regarding any
alleged consideration of other candidates beyond the rubber-stamping of Ms. Forsha's selection." (quoting Def.'s
Mem. at 3)); Def.'s Reply at 5 ("Mr. Berry testified that his involvement in the selection process was to conduct a
'meet-and-greet' type of interview with the recommended selectees who had 'emerged in the process as finalists' so
he could get to know them before concurring in the interview panel's recommendation." (citing Def.'s Mot., Ex. 19
(Deposition of James D. Berry, Jr. ("Berry Dep.")) 23:12–20, ECF No. 54-23)).  However, this disputed fact is
immaterial to the evaluation of the plaintiff's discrimination claims because, even if the Court were to accept the
plaintiff's contention that Berry deviated from his part of CSOSA's standard selection procedures, this would not
create an inference of discrimination against the plaintiff, because per the asserted standard procedure, Berry did not
review or consider the plaintiff's application for the position.  See Pl.'s Opp'n, Ex. 1 (Report of Investigation –
Affidavit of James D. Berry, Jr. ("Berry Aff.")) at 155, ECF No. 56-2 (stating that he "did not conduct an evaluation
of any of the candidates for this position" and instead, "[a]s [he] do[es] routinely in the appointment of Branch
Chiefs, [ ] interviewed the recommended candidate in order to meet her, learn about her leadership style, and share
with her the top CSS priorities of the Office of the Director").

so.  See, e.g., Saulsberry v. Barr, 468 F. Supp. 3d 340, 345 (D.D.C. 2020) (finding that the plaintiff's evidence raised an inference of discriminatory motive where the plaintiff identified "procedural irregularities in a highly subjective selection process" (quoting Hamilton, 666 F.3d at 1352)).   Rather, the plaintiff has merely presented the circular argument that the defendant's actions were discriminatory solely because they purportedly violated the non-discrimination provision of the defendant's Merit Promotion Plan.  See Pl.'s Opp'n at 2.

The plaintiff's argument that "the selected [interview] questions were not directly related to the position being filled and benefitted individuals with limited supervisory experience," id. at 14, is also unavailing.  In support of this argument, the plaintiff specifically references three questions presented to all candidates, see Def.'s Facts ¶ 24; Pl.'s Facts ¶ 24, stating that "Questions 1, 4, and 9,[5] of the Branch Chief Interview Questions were open-ended questions not relevant to CSOSA's overall goals or the responsibilities of the Branch Chief position."  Pl.'s Opp'n at 14 (citing id., Ex. 1 (Report of Investigation – Branch Chief Interview Questions ("Interview Questions")) at 213–14, ECF No. 56-2).  These questions were the following:

> 1. As Branch Chief you are directly responsible for motivating and guiding others towards agency goal attainment which includes holding yourself and others accountable for timely, measurable, and high quality results and or deliverables. Tell the panel about a specific agency goal or deliverable under your leadership where there was resistance to attain a goal. What personal leadership skills did you draw upon and what specific steps did you take to motivate staff and toward compliance with the agency goal/deliverable and what were the results?
>
> . . .

---

[5] The plaintiff references a "Question 9" in her opposition.  See Pl.'s Opp'n at 14.  However, there are only eight total questions listed in the Branch Chief Interview Questions.  See id., Ex. 1 (Interview Questions) at 213–14. Therefore, given that Question 8 is the last question and one of the "open-ended" questions to which the plaintiff appears to refer in her opposition, see id. at 14, the Court will assume that the plaintiff, when she references Question 9, is actually referencing Question 8.  See Def.'s Reply at 6 n.2 ("Thus, for purposes of this reply, the [the d]efendant presumes that [the p]laintiff intended to reference Question 8, i.e., the final question posed by the interview panel." (underline added)).

4. As Branch Chief what are some of the limitations you may have as it relates to Evidence Based Practices (EBP) and what assistance would you need to further develop them?

. . .

8. Please explain to the panel why you are the best candidate for the position?

Id., Ex. 1 (Interview Questions) at 213–14.  The plaintiff contends that these questions "had little or nothing to do with a candidate's prospective responsibilities as Branch Chief[,]" id. at 14; "were not specific 'to the position in accordance with the position announcement' . . . [or] 'targeted to the qualifications' of [the] open position[,]" id.; and "were used by [the d]efendant to give Ms. Forsha an advantage to compensate for her lack of qualifications and supervisory experience compared to [the p]laintiff[,]" id. at 15.

Although evidence of the "[u]se of the interview process to minimize a candidate's strengths," Stoe, 960 F.3d at 645, can give rise to an inference of discrimination, the plaintiff has provided no evidence—aside from conclusory interpretations—that these questions were in any way irrelevant to the qualifications for the vacant position, or that they were used for the purpose of disadvantaging the plaintiff, see generally Pl.'s Opp'n at 14–16.  As to Question 1, contrary to the plaintiff's assertion that the questions "benefitted individuals with limited supervisory experience," id. at 14, this question specifically queried the candidates regarding their supervisory skills and experience, see id., Ex. 1 (Interview Questions) at 213.  And, the question speaks directly to the requirements listed in the vacancy announcement that the person who would occupy the position "is responsible for directing and managing staff" and must have the ability to "provide supervision and/or leadership to subordinate staff."  Id., Ex. 1 (Report of Investigation – Vacancy Announcement ("Vacancy Announcement")) at 160, ECF No. 56-2.  Question 4 queried the candidates regarding their familiarity with evidence-based practices, see

14

id., Ex. 1 (Interview Questions) at 213, which speaks directly to one of CSOSA's primary
goals—"strengthen[ing] its evidence-based culture[,]" Def.'s Mot., Ex. 19 (Berry Dep.) 41:6–15.
See Def.'s Facts ¶ 32 ("[T]he Interview Panel felt that [the p]laintiff lacked an understanding of
evidence-based practices and problem solving skills, . . . [which] were deemed critical for
success in the vacancy."); accord Pl.'s Facts ¶ 32.  Finally, Question 8 provided an open-ended
opportunity for each candidate to express their qualifications for the position.  See Pl.'s Opp'n,
Ex. 1 (Interview Questions) at 214.  The Court agrees with the defendant that "it is difficult to
imagine a job interview that does not provide a candidate with at least one opportunity to sum up
their relative qualifications for the open position."  Def.'s Reply at 7.  And, contrary to the
plaintiff's contention that this question was "used by [the d]efendant to give Ms. Forsha an
advantage[,]" Pl.'s Opp'n at 15, this general question presumably would have allowed the
plaintiff to express any of her qualifications which she considered relatively superior to Forsha's,
but which were not otherwise elicited through the other interview questions.  Therefore, because
the Court may not "second-guess an employer's personnel decision absent demonstrably
discriminatory motive[,]" Milton, 696 F.2d at 100, the Court concludes that a reasonable jury
could not infer pretext for discrimination based upon the interview questions posed to the
applicants in this case.

## 2.  The Plaintiff's Allegation Regarding Spoliation of Evidence

The plaintiff next argues that "[the d]efendant further deviated from standard hiring
policies by failing to produce any record of notes from the interview panel created for the Branch
Chief position opening, harming [the p]laintiff by precluding evidence that would be relevant to
her claims[,]" and that therefore, "these actions raise an inference of spo[li]ation of evidence[.]"
Pl.'s Opp'n at 18.  In response, the defendant argues that the plaintiff is not entitled to a negative

inference of spoliation because, to establish such entitlement, the plaintiff must "demonstrate that records were at least negligently destroyed . . . [and h]ere, the only evidence [the p]laintiff proffers to support her request for [an] inference of spoliation is the [Report of Investigation] (which [the p]laintiff merely states lack[s] any purported interview notes) and [the p]laintiff's written discovery requests."  Def.'s Reply at 8 (emphasis omitted).

This Circuit "has recognized the negative evidentiary inference arising from spoliation"—i.e., destruction—"of records."  Talavera v. Shah, 638 F.3d 303, 311 (D.C. Cir. 2011) (citing Webb v. District of Columbia, 146 F.3d 964 (D.C. Cir. 1998); Shepherd v. Am. Broad. Co., 62 F.3d 1469 (D.C. Cir. 1995)).  Specifically, "a negative inference [of spoliation] may be justified where the defendant has destroyed potentially relevant evidence[,]" Gerlich v. U.S. Dep't of Just., 711 F.3d 161, 170 (D.C. Cir. 2013), and has done so at least negligently, see Talavera, 638 F.3d at 312.

Here, the plaintiff has not provided any evidence that interview notes in this case existed or were destroyed, but merely states that they were not produced during discovery as part of the Report of Investigation.  See Pl.'s Opp'n at 17 (stating that the defendant "was at least negligent in failing to produce the evidence requested by [the p]laintiff" and that "the Court should [allow an inference of spoliation] with regard to [the d]efendant's failure to produce notes from the interview panel").  Therefore, even accepting that interview notes, if they exist, might be relevant to the plaintiff's claims, she has not alleged any actual destruction of the notes which would give rise to an inference of spoliation.  See Gerlich, 711 F.3d at 170 ("[A] negative inference [of spoliation] may be justified where the defendant has destroyed potentially relevant evidence." (emphasis added)).  And, to the extent that the plaintiff seeks to challenge the defendant's lack of responsiveness to her discovery requests, a "discovery-dispute argument . . . is not appropriate in

an opposition to summary judgment." Ben-Kotel v. Howard Univ., 156 F. Supp. 2d 8, 15

(D.D.C. 2001). If the plaintiff wished to raise a discovery dispute concerning the non-production

of requested documents, she should have done so prior to the close of discovery, see General

Order for Civil Cases Before the Honorable Reggie B. Walton at 5 (Apr. 24, 2018), ECF No. 9

("If, in what should be the unusual situation, counsel are unable to resolve [a discovery] dispute,

counsel shall contact chambers to arrange for a telephone conference with the Court. Counsel

must resolve all discovery disputes or bring them to the Court's attention in a timely manner to

allow sufficient time for the completion of discovery within the time set by the Court."), which

she failed to do. Accordingly, the Court concludes that an inference of spoliation is

inappropriate in this case.

### 3. The Relative Qualifications of the Plaintiff and the Selected Candidate

The plaintiff next argues that "Ms. Forsha's lack of qualifications compared to [the

p]laintiff's significantly greater qualifications give rise to an inference of discrimination

sufficient to survive summary judgment." Pl.'s Opp'n at 18. In response, the defendant argues

that, in light of the relative qualifications between the plaintiff and Ms. Forsha, "[the p]laintiff

cannot show that there is a 'qualification gap . . . great enough to be inherently indicative of

discrimination.'" Def.'s Reply at 13 (quoting Jackson, 496 F.3d at 707).

A plaintiff challenging an employer's "qualifications-based explanation [for the

plaintiff's non-selection] may establish pretext by . . . presenting evidence showing 'a reasonable

employer would have found the plaintiff significantly better qualified for the job but nevertheless

failed to offer the position to her[.]'" Jeffries v. Barr, 965 F.3d 843, 861 (D.C. Cir. 2020)

(quoting Holcomb, 433 F.3d at 897) (emphasis in original). Therefore,

> [i]f a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998).  However, "[i]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination."  Holcomb, 433 F.3d at 897.  In making this determination, "courts 'defer to the [employer's] decision of what nondiscriminatory qualities it will seek' in filling a position[,]" Jackson, 496 F.3d at 708 (quoting Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir. 2003)) (alteration in original), and "will not second-guess how an employer weighs particular factors in the hiring decision[,]" id. at 709.  "Indeed, [the Circuit] ha[s] even said that an employer may select 'a candidate who on paper is less qualified for other reasons, such as subjective reactions that emerge in the interview[,]'" but that courts should be "cautious in accepting such purely subjective explanations when the plaintiff otherwise is 'significantly better qualified.'"  Id. (quoting Aka, 156 F.3d at 1294 n.10).

Here, the plaintiff cites two reasons why the plaintiff was allegedly significantly better qualified than Ms. Forsha for the Branch Chief position, namely, that she: (1) "had quadruple the amount of experience in a supervisory position compared to Ms. Forsha[,]" and (2) had a "relevant certification that Ms. Forsha did not possess."  Pl.'s Opp'n at 22.  The defendant cites the determination that Ms. Forsha "had the strongest interview performance[,]" Def.'s Mem. at 11 (stating that "[u]nlike [the p]laintiff, Ms. Forsha was able to provide examples of how she successfully served in leadership roles, and how she would apply those skills and experiences to successfully perform as a Branch Chief"), as well as her higher education level attainment when compared to the plaintiff, see id. at 13 ("[A]lthough [the p]laintiff had obtained a bachelor's

degree in sociology and criminal justice, Ms. Forsha possessed a master's degree in criminal justice with a behavior analysis specialization."), as its primary reasons for selecting Ms. Forsha for the Branch Chief position.  The defendant further states that "CSOSA's selection determination was based primarily on performance in the interview process[,]" id. at 11, and that although the plaintiff possesses a greater number of years of experience, she "failed to leverage her experience into a compelling response to the interview questions[,]" id. at 14.

As a preliminary matter, the Court concludes that the plaintiff's "certifications as a Certified Criminal Justice Addictions Specialist[,]" Pl.'s Opp'n, Ex. 1 (Report of Investigation – Affidavit of Denetra T. Brisbon ("Pl.'s Aff.")) at 96, ECF No. 56-2, are not accorded significant weight in the Court's analysis, given the plaintiff's concession that this certification was no longer active when she applied for the Branch Chief position, see Def.'s Mot, Ex. 17 (Deposition of Denetra T. Brison ("Pl.'s Dep.")) 172:24–173:3, ECF No. 54-21; but see id., Ex. 17 (Pl.'s Dep.) 173:7–9 (stating that she "continued to use the experience that [she] gained from the classes and certification to deal with the population [CSOSA] serve[s]").  Therefore, the main thrust of the plaintiff's argument concerns the difference in years of experience, including supervisory experience, between the plaintiff and Ms. Forsha.  See generally Pl.'s Opp'n at 18–22.  And, indeed, the difference in years of experience between the plaintiff and Ms. Forsha is significant.  At the time that she applied for the Branch Chief position, the plaintiff had worked for CSOSA for approximately eighteen years, see Def.'s Facts ¶ 6 (stating that the plaintiff "has been employed at CSOSA since 1998"); id. ¶ 16 (stating that the plaintiff applied for the Branch Chief position in March 2016); accord Pl.'s Facts ¶¶ 6, 16, and during her tenure held a supervisory position for approximately eight years, see Def.'s Facts ¶ 8 (stating that the plaintiff "has held the position of Supervisory Community Supervision Officer . . . since March 2008");

accord Pl.'s Facts ¶ 8.  In contrast, at the time of her application for the Branch Chief position,

Ms. Forsha had worked for CSOSA for nine years, see Pl.'s Opp'n at 28, and held a supervisory

position for two years, see Compl. ¶ 8; Answer ¶ 8.  Thus, compared to Ms. Forsha, the plaintiff

had twice as many years of experience at CSOSA, and four times as many years of experience in

a supervisory position.

      If the relative years of experience between two applicants alone were dispositive as to the

question of whether a qualifications gap is sufficiently significant, the facts in this case would

likely give rise to an inference of discrimination.  However, experience is just one of many

factors—both objective and subjective—that an employer may consider in choosing one

applicant over another, and "[i]t is not for the Court . . . to assess which qualities should 'weigh[]

more heavily' for an employer."  Pendleton v. Holder, 697 F. Supp. 2d 12, 18 (D.D.C. 2010)

(quoting Barnette v. Chertoff, 453 F.3d 513, 517 (D.C. Cir. 2006)).  Here, the defendant

prioritized consideration of Ms. Forsha's education level and specialization,[6] see Def.'s Mem. at

13, in addition to her interview performance, see id. at 11, relative to the plaintiff, as reasons why

she was selected for the Branch Chief position.  The defendant also notes that, in her interview,

Ms. Forsha "'made the most references to evidence-based practices'—a priority for CSOSA—

---

[6] In response to the defendant's argument that "Ms. Forsha's higher level of education was superior to [the p]laintiff's," Def.'s Mem. at 13, the plaintiff argues that "no advanced degrees were required to be selected for the Branch Chief position" and, instead, the vacancy announcement only indicated a requirement that the applicant have attained a four-year degree.  Pl.'s Opp'n at 21 (citing id., Ex. 1 (Vacancy Announcement) at 161).  However, although an advanced degree was not required, the skills and knowledge that Ms. Forsha acquired from her advanced degree in criminal justice and behavior analysis were "fairly encompassed within the [vacancy] announcement[,]" Adeyemi v. District of Columbia, 525 F.3d 1222, 1228 (D.C. Cir. 2008), and there was no proscription against additional education being considered.  See Pl.'s Opp'n, Ex. 1 (Vacancy Announcement) at 160 (listing, under the position's technical qualifications, "[s]kill in leading work performed to apply the theories, principles, and practices in the field of criminal justice, psychosocial and the behavioral sciences required to lead work in the field of community supervision programs"); see also Jackson, 496 F.3d at 709 ("The fact that an employer based its ultimate hiring decision on one or more specific factors encompassed within a broader and more general job description does not itself raise an inference of discrimination sufficient to overcome summary judgment.").  Therefore, the Court concludes that the consideration of a higher level of educational attainment does not create an inference of discrimination.

and 'she seemed to be most familiar' with CSOSA leadership styles and practices[,]" Def.'s

Reply at 6 (quoting Def.'s Mot., Ex. 19 (Berry Dep.) 41:16–19), which are valid considerations

based on CSOSA's goals and hiring priorities, see Thompson v. McDonald, 169 F. Supp. 3d 170,

189 (D.D.C. 2016) (concluding that an employer was "entitled to assess [the plaintiff's]

qualifications based on [its] 'strategic priorities and goals at the time, the strengths and

weaknesses of the applicant pool, and the overall skills of and gaps in [its] existing workforce'"

(quoting Jackson, 496 F.3d at 708)).  And, to the extent that the defendant weighed these factors

more heavily than the plaintiff's relative experience, the Court must "'defer to the [employer's]

decision of what nondiscriminatory qualities it will seek' in filling a position[,]" Jackson, 496

F.3d at 708 (quoting Stewart, 352 F.3d at 429) (alteration in original), and refrain from "second-

guess[ing] how [the] employer weigh[ed] particular factors in the hiring decision[,]" id. at 709.

See Pendleton, 697 F. Supp. 2d at 18 ("Although the [interview] panel considered [the

plaintiff's] extensive experience[,] . . . it ultimately decided that [the selectees'] other

qualifications 'seemed to compensate for' their relative lack of experience[.]  The Court has no

basis to second[-]guess this explanation." (citations omitted)).  Accordingly, the Court

concludes, based on the record before it, that the plaintiff has failed to establish a qualifications

gap significant enough for a reasonable jury to infer discrimination.

### 4.  The Plaintiff's Allegations Concerning the Defendant's Inconsistent and Shifting Justifications

Finally, the plaintiff argues that "[the d]efendant has provided inconsistent and shifting

justifications to mask its pre-selection of Ms. Forsha for the Branch Chief position, sufficient to

give rise to an inference of discriminatory pretext."  Pl.'s Opp'n at 22.  In support of this

contention, the plaintiff specifically states that (1) "[the d]efendant falsely asserts in its

[m]otion . . . that Deputy Director Berry considered each applicant recommended by the interview panel[,]" contrary to Berry's affidavit testimony, id. at 23, and (2) although the defendant "emphasizes 'intangible qualities' and alleges that the 'strength of the candidates' interview responses was weighed more heavily than the candidates' years of experience[,]'" "neither Ms. Bethea nor Mr. Berry state in their affidavits that they took any 'intangible qualities' into consideration when selecting Ms. Forsha for the Branch Chief position," id. at 24. In response, the defendant argues that (1) Berry consistently testified that he "conducted an interview of the recommended selectees[,]" but "did not conduct an assessment of the candidates," Def.'s Reply at 14 (emphasis added), and (2) as to the plaintiff's argument regarding the use of "intangible qualities," "CSOSA's managers relied on the evaluation of [the] interview panel, which cited to several instances of how Ms. Forsha demonstrated her superior qualifications and skills during the interview process[,]" id.

Where an employer's reasons for a plaintiff's adverse employment action "change[] over time[,]" Geleta v. Gray, 645 F.3d 408, 413 (D.C. Cir. 2011), "[s]uch shifting and inconsistent justifications are 'probative of pretext[,]'" id. (quoting Equal Emp. Opportunity Comm'n v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001)). However, "there are 'instances where, although the plaintiff has . . . set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory[,]'" Giles v. Transit Emps. Fed. Credit Union, 794 F.3d 1, 9 (D.C. Cir. 2015) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)) (first alteration in original), such as the inadequate "probative value of the proof that the employer's explanation is false," Reeves, 530 U.S. at 149.  See Giles, 794 F.3d at 9 ("[T]he plaintiff's attack on the employer's explanation must always be assessed in the light of the total circumstances of the case.").

Here, as to the plaintiff's argument regarding the defendant's inconsistent characterizations of Berry's role in the selection process, see Pl.'s Opp'n at 23, the Court finds for the same reasons previously stated, see supra Section III.A.1, that any factual disputes regarding the specifics of Berry's role in the selection process are immaterial to the plaintiff's discrimination claims.  Therefore, although "evidence that an employer has offered shifting rationales . . . is generally sufficient to create an issue of fact for the jury," Clendenny v. Architect of the Capitol, 236 F. Supp. 3d 11, 25 (D.D.C. 2017), any inconsistency between the defendant's characterization of Berry's role and Berry's affidavit testimony is immaterial, given that he did not consider or evaluate the plaintiff as a candidate for the Branch Chief position. Furthermore, the plaintiff specifically focuses on the difference between Berry's affidavit testimony, which states that he "accepted the recommendation of Kaitlin Forsha for the position . . . [and] had no second or third choices[,]" Pl.'s Opp'n, Ex. 1 (Barry Aff.) at 157, and the defendant's motion, which states that Berry "considered each of the three applicants recommended by the panel, but ultimately accepted Ms. Bethea's recommendation . . . of Ms. Forsha[,]" Def.'s Mem. at 3; accord Def.'s Mot., Ex. 19 (Berry Dep.) 23:4–24:8.  However, "[s]uch fine descriptive differences between materially consistent accounts," Walker, 798 F.3d at 1094 (emphasis added)—i.e., the omission of Berry's explicit "consider[ation,]" Def.'s Mem. at 3, of the two other final candidates before approving the recommendation—"without more, do not tend to make the accounts unworthy of belief, let alone support an inference of discrimination or retaliation[,]" Walker, 798 F.3d at 1094.  See Def.'s Facts ¶ 57 (stating that "Berry considered each of the three applicants recommended by the Interview Panel, but ultimately approved the promotion of Ms. Forsha"); Pl.'s Facts ¶ 57 ("Undisputed.").

Furthermore, as to the plaintiff's argument regarding inconsistencies in the defendant's purported reliance on "intangible factors" in its selection process, the Court finds that the defendant's various statements on this point are "materially consistent[,]" Walker, 798 F.3d at 1094, and are therefore not probative of pretext.  The plaintiff contends that, although the defendant "emphasizes 'intangible qualities'" in its explanation for the selection of Ms. Forsha for the Branch Chief position, Pl.'s Opp'n at 24 (quoting Def.'s Mem. at 14), "neither Ms. Bethea nor Mr. Barry stated in their affidavits that they took any 'intangible qualities' into consideration[,]" id.  However, Bethea did not provide any explanation for Ms. Forsha's selection in her affidavit, see generally id., Ex. 1 (Report of Investigation – Affidavit of Yolanda Bethea ("Bethea Aff.")) at 104–08, ECF No. 56-2, and Berry merely stated that "[i]t [wa]s [his] understanding that [Ms. Forsha] represented herself in exemplary fashion during the Associate Director level interview and other selection processes[,]" id., Ex. 1 (Berry Aff.) at 157, and that "[his] interview with [her] confirmed this assessment[,]" id., Ex. 1 (Berry Aff.) at 157.  Moreover, contrary to the plaintiff's position, the minimal explanation for the selection that Berry did articulate in his affidavit reflects the consideration of an "intangible quality," namely, what he was told about Ms. Forsha's interview performance.  See Jackson, 496 F.3d at 709 ("Indeed, [the Circuit] ha[s] even said that an employer may select 'a candidate who on paper is less qualified for other reasons, such as subjective reactions that emerge in the interview[.]'" (quoting Aka, 156 F.3d at 1294 n.10) (emphasis added)).  Thus, Bethea's and Berry's affidavit testimony are not inconsistent with the defendant's reliance on Ms. Forsha's education level, see Def.'s Mem. at 13, and interview performance, see id. at 11, as its primary justifications for her selection.  Furthermore, the Court has concluded that the consideration of these factors is permissible and not indicative of discriminatory intent in the context of this case.  See supra

Section III.A.3.  Accordingly, because the plaintiff has failed to prove that the defendant's

proffered reasons for her non-selection constitute pretext for discrimination, see McDonnell

Douglas, 411 U.S. at 805, the Court must grant the defendant's motion as it pertains to the

plaintiff's discrimination claims.

**B.     The Plaintiff's Retaliation Claim**

The plaintiff also claims that the defendant retaliated against her "for participating in

litigation arising from her February 2008 complaint of discrimination and subsequent EEO

complaint which was resolve[d] in 2016, when [CSOSA] did not select her for the . . . Branch

Chief position[.]"  Compl. ¶ 25.  The defendant argues that "[the p]laintiff [ ] cannot show that

her non-selection was based on her prior EEO activity[,]" Def.'s Mem. at 15, for three reasons:

(1) "[the p]laintiff has failed to show that any members of her interview panel were even aware

of her prior EEO activity[,]" id. at 16; (2) "[the p]laintiff cannot rely on temporal proximity to

establish causation for her retaliation claim[,]" id.; and (3) "for the same reasons discussed [ ]

with respect to [the p]laintiff's discrimination claims, [she] cannot show that 'relative difference'

between her qualifications and Ms. Forsha's are such that [she] would have been selected for the

position but for her prior EEO activity[,]" id. at 17.  In response, the plaintiff argues that: (1)

"[the d]efendant[] had knowledge of [the p]laintiff's EEO activity, as well as the EEO activity of

other [CSOSA] employees[,]" Pl.'s Opp'n at 26, and specifically, "[she] has shown constructive

knowledge on behalf of [the d]efendant and Ms. Bethea[,]" id.; (2) "[the p]laintiff can rely on

temporal proximity in establishing causation for her retaliation claim[,]" id. at 28, because her

"May 2013 EEO complaint was still pending as of March 2016[,] . . . when she was not selected

for the Branch Chief position[,]" id.; and (3) "[the p]laintiff can show a significant difference

between her qualifications and Ms. Forsha's qualifications[,]" id.

"Like claims of discrimination, claims of retaliation are governed by the McDonnell Douglas burden-shifting scheme." Carney v. Am. Univ., 151 F.3d 1090, 1094 (D.C. Cir. 1998) (citing McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir.1984)). Thus, similar to Title VII discrimination claims, retaliation claims brought pursuant to Title VII that are based on circumstantial evidence trigger the McDonnell Douglas burden-shifting framework. 411 U.S. at 802–05; see Walker, 798 F.3d at 1091; see also Holcomb, 433 F.3d at 895. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing "(1) that [s]he engaged in [a] statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the [protected activity and the materially adverse action]." Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009); see also Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012). Once a prima facie case is established, the burden then shifts to the employer, who must articulate some legitimate and non-retaliatory reason for its actions. See Jones, 557 F.3d at 677. However,

> [w]here[ ] . . . 'the employer has proffered a legitimate, [non-retaliatory] reason for the challenged employment action, the central question is whether the employment produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee' in violation of Title VII.

McGrath v. Clinton, 666 F.3d 1377, 1383 (D.C. Cir. 2012) (quoting Calhoun v. Johnson, 632 F.3d 1259, 1261 (D.C. Cir. 2011)) (alterations in original) (internal quotation marks omitted).

Here again, the defendant has proffered a legitimate, non-retaliatory reason for the plaintiff's non-selection, see supra Section III.A, and therefore, the relevant question for the Court's consideration is whether the plaintiff has shown that the defendant's asserted reasons are pretext for retaliation, see Walker, 798 F.3d at 1092. First, regarding her argument that "[the d]efendant[] had knowledge of [the p]laintiff's EEO activity, as well as the EEO activity of other

[CSOSA] employees[,]" Pl.'s Opp'n at 26, the plaintiff specifically states that "[a]s an upper

level management executive, Acting Associate Director Yolanda Bethea had access to

succession plans left to her by previous management executives, which included work related

activities such as [the p]laintiff's EEO complaints[,]" id. at 27.[7]  "[T]o establish the requisite

causal nexus between the protected activity and the employer's materially adverse action, a

plaintiff must demonstrate by direct or circumstantial evidence that the employer had actual

knowledge of the protected activity and took adverse action against him because of it."[8]  Sledge

v. District of Columbia, 63 F. Supp. 3d 1, 19 (D.D.C. 2014).  However, "[a]lthough [the

plaintiff] 'need only offer circumstantial evidence that could reasonably support an inference'

that [the employer] knew of her EEO activity, and context matters," Talavera, 638 F.3d at 313

(quoting Jones, 557 F.3d at 679), the plaintiff cannot satisfy her burden by merely "offer[ing]

only evidence from which a reasonable jury would have [ ] to speculate[,]" id. (emphasis added),

regarding the employer's knowledge.  See Morris v. McCarthy, 825 F.3d 658, 674 (D.C. Cir.

2016) ("[A]n employee cannot survive summary judgment if a jury can do no more than

'speculate' that her employer knew of her protected activity.") (quoting Talavera, 638 F.3d at

313); Walker v. Children's Nat'l Med. Ctr., 236 F. Supp. 3d 136, 146 (D.D.C. 2017) (granting

---

[7] The plaintiff also references the defendant's knowledge of "other candidates [who] filed similar EEO complaints based on race and age around the same time as [the p]laintiff." Pl.'s Opp'n at 27. However, the Court finds that this potential knowledge is irrelevant to the plaintiff's retaliation claim, given that the operative consideration is whether the defendant had knowledge of the plaintiff's protected activity, not the activites of others. See Chen v. Gen. Accounting Office, 821 F.2d 732, 739 (D.C. Cir. 1987) (stating that the plaintiff had "made out a prima facie case of retaliation . . . [where h]e ha[d] shown that he engaged in protected activity of which his employer had knowledge . . . , that he was adversely affected by an action of his employer, and a causal relationship between the two").

[8] The plaintiff argues that a showing of constructive knowledge is sufficient to satisfy her burden. See Pl.'s Opp'n at 26.  In support of this argument, she cites to one case from the United States Court of Appeals for the Eighth Circuit, see id. (citing Schuhardt v. Wash. Univ., 390 F.3d 563 (8th Cir. 2004)), but the Court has been unable to locate any precedent from this Circuit that supports this proposition. Accordingly, the Court concludes that the plaintiff must at least provide circumstantial evidence that the employer had actual knowledge of her protected activity. See Sledge v. District of Columbia, 63 F. Supp. 3d 1, 19 (D.D.C. 2014) (citing Jones, 557 F.3d at 670).

summary judgment where the plaintiff failed to provide evidence to rebut the employer's

affidavit, which claimed a lack of knowledge of the plaintiff's protected activity).

Here, in support of her contention that the defendant had knowledge of her prior EEO

activity, the plaintiff states only that Ms. Bethea had constructive knowledge via "succession

plans left to her by previous management executives, which included work related activities such

as [the p]laintiff's EEO complaints[,]" Pl.'s Opp'n at 27, and that "Ms. Powell and Ms. Bethea

were made aware of [the p]laintiff's prior EEO filings during the selection of promotion rather

than following the interview[,]" Pl.'s Facts ¶ 56.[9]   However, Bethea stated in her affidavit that

she was not "aware that the [plaintiff] had previously participated in a protected EEO activity . . .

until [September 20, 2016]."  Pl.'s Opp'n, Ex. 1 (Bethea Aff.) at 105.  And, although the plaintiff

makes conclusory statements regarding succession plans that would have put Bethea on notice of

the plaintiff's protected activity, as well as a conclusory statement that Bethea was made aware

of the plaintiff's protected activity during the selection process, these contentions are

unsupported by any direct or even circumstantial evidence.  See Pl.'s Opp'n at 27; Pl.'s Facts ¶

56.  Therefore, the Court concludes, that without more, this evidence would allow the jury to "do

no more than 'speculate' that [the plaintiff's] employer knew of her protected activity[,]" Morris,

825 F.3d at 674 (quoting Talavera, 638 F.3d at 313), and the plaintiff has thus not met her

burden.

Second, as to the argument that "[the p]laintiff can rely on temporal proximity in

establishing causation for her retaliation claim[,]" Pl.'s Opp'n at 28, the plaintiff specifically

states that her "May 2013 EEO complaint was still pending" when the Branch Chief selection

---

[9] The Court agrees with the defendant that Ms. Powell's alleged knowledge is irrelevant, given that she "had no role in the selection process[,]" Def.'s Reply at 15 n.3.  See Def.'s Facts ¶ 21 (listing the members of the interview panel); accord Pl.'s Facts ¶ 21.

process took place.  Id.  In support of this contention, she states that "[t]he report of investigation notes that [the p]laintiff's January 2007 EEO complaint was resolved via a default judgment on September 26, 2011[,] but does not state that [the p]laintiff's 2013 EEO complaint . . . was still ongoing when she was not selected for the Branch Chief position."  Id. (citing Def.'s Mem. at 16).  However, even assuming that the plaintiff can establish temporal proximity between her 2013 EEO complaint and her 2016 non-selection, establishing temporal proximity, without more, which is not the case here, is insufficient to show pretext.  See Drewrey v. Clinton, 763 F. Supp. 2d 54, 64 (D.D.C. 2011) ("[E]ven if the temporal proximity here w[ere] close enough to show a causal connection so as to satisfy a prima facie case for retaliation, this would not without more, provide sufficient evidence to show pretext."), aff'd, 466 Fed. App'x 9 (D.C. Cir. 2012); Porter v. Fulgham, 601 F. Supp. 2d 205, 229 (D.D.C. 2009) ("Temporal proximity of the [adverse employment action] and the plaintiff's earlier [protected activity], while it supports the finding of a prima facie case, is not, without more, proof enough to show that the Agency acted with retaliatory intent."), rev'd on other grounds sub nom., Porter v. Shah, 606 F.3d 809 (D.C. Cir. 2010).

Finally, regarding the plaintiff's arguments that she "can show a significant difference between her qualifications and Ms. Forsha's qualifications[,]" Pl.'s Opp'n at 28, the plaintiff reiterates her contention that the qualifications gap between the plaintiff and Ms. Forsha is indicative of retaliation, and provides identical reasoning as that provided in support of her discrimination claims.  See id. at 28–29; see also supra Section III.A.3.  The standard for establishing a qualifications gap sufficient to infer pretext is lower with regard to retaliation claims than with regard to discrimination claims.  Compare Jeffries, 965 F.3d at 861 (stating that a plaintiff challenging an employer's "qualifications-based explanation [for the plaintiff's non-

selection] may establish pretext by . . . presenting evidence showing 'a reasonable employer would have found the plaintiff <u>significantly</u> better qualified for the job but nevertheless failed to offer the position to her.'" (quoting <u>Holcomb</u>, 433 F.3d at 897) (emphasis in original)), <u>with Savage v. Burwell</u>, No. 15-cv-791 (CRC), 2016 WL 4132196, at *6 (D.D.C. Aug. 3, 2016) ("[I]n retaliatory non[-]selection cases, a plaintiff . . . must demonstrate only that the 'relative difference between her qualifications' and those of the selectee 'does not so greatly favor' the selectee 'that no reasonable jury could conclude [that she] would have been promoted but for the alleged retaliatory animus' of the deciding officials." (quoting <u>Roman v. Castro</u>, No. 12-cv-1321 (CRC), 2016 WL 829874, at *12 (D.D.C. Mar. 1, 2016) (internal quotation marks omitted) (second alteration in original)).  However, despite this lower standard, the plaintiff must still "demonstrate that retaliation was the 'but for' cause of the [non-selection], a more restrictive standard than for claims of discrimination."  <u>Kilby-Robb v. Duncan</u>, 77 F. Supp. 3d 164, 176 (D.D.C. 2015).  Furthermore, other members of this Court have found a qualifications gap, which was insufficient to establish discrimination, sufficient to survive summary judgment as to a retaliation claim, but only where the plaintiff had proffered evidence of retaliatory animus.  <u>See, e.g.</u>, <u>id.</u> at 176–77 (denying summary judgment, but finding it a "close case," where "the relative difference in [ ] qualifications d[id] not so greatly favor [the selectee]" <u>and</u> the plaintiff had provided some evidence of retaliatory animus); <u>Youssef v. Holder</u>, 62 F. Supp. 3d 96, 99–100 (D.D.C. 2014) (finding the plaintiff's contentions regarding a qualifications gap insufficient as to his discrimination claim, but probative as to his retaliation claim where he "was able to present more evidence of potentially retaliatory motive").  Therefore, the Court concludes that, based upon its reasoning with respect to the qualifications gap alleged in connection with the plaintiff's discrimination claims, <u>see</u> <u>supra</u> Section III.A.3, and taking into account the various

factors considered by the defendant in deciding to select Ms. Forsha for the Branch Chief

position, any qualifications gap between the plaintiff and Ms. Forsha "does not so greatly favor"

the plaintiff, <u>Savage</u>, 2016 WL 4132196, at *6, sufficient for a reasonable jury to infer retaliatory

motive.  And because, as discussed above, the plaintiff has not demonstrated any retaliatory

animus, she also cannot establish that "retaliation was the 'but for' cause of [her non-selection.]"

<u>Kilby-Robb</u>, 77 F. Supp. 3d at 176.  Accordingly, because the plaintiff has failed to prove that

the defendant's proffered reasons for her non-selection constitute "pretext for [retaliation],"

<u>McDonnell Douglas</u>, 411 U.S. at 805, the Court must also grant the defendant's motion as it

pertains to the plaintiff's retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion

for summary judgment.

**SO ORDERED** this 8th day of November, 2022.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.